IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN J. MEYER ) | |
|     ID# 1311426 ) | |
|         Petitioner, ) | |
| vs. ) | No. 3:10-CV-0523-B (BH) |
| ) | |
| RICK THALER, Director, ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
|         Respondent. ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred for findings, conclusions, and recommendation.

## I. BACKGROUND

On March 10, 2010, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for murder in cause F04-41265-NK. Respondent is Rick Thaler, Director of TDCJ-CID.

### A. Factual and Procedural History

On September 7, 2004, the State indicted petitioner for the murder of Jose Campos on or about August 15, 2004. (Trial Transcript:2-3). He pled not guilty and was tried before a jury on June 14-17, 2005. The jury found him guilty and sentenced him to thirty-five years' imprisonment. (*Id*. at 4, 72).

The state appellate court recounted the evidence presented at trial as follows:

> The murder occurred in Campos's apartment on August 15, 2004 and was witnessed by Campos's friend, Daniel Acuna. Campos, Meyer, Acuna, and Meyer's friend Diego Alba had spent the night "hanging out...drinking, and snorting cocaine." Alba left Campos's apartment around 3:45 a.m. and "everything was fine" at that time. About four hours later, Acuna went to sleep and left Campos and Meyer sitting in the living room. When Acuna awoke

two hours later, he found Meyer in the kitchen and Campos still sitting in the living room, almost asleep. Moments later, Meyer approached Campos "slowly" and began insulting him and stabbing him in the chest and stomach with a knife. Although Campos tried to stand up and defend himself, he was unable to do so. Meyer stabbed Campos five times before Acuna was able to take the knife away from Meyer. Meyer appeared unconcerned and told Acuna he stabbed Campos because Campos "was talking s--- about me." Meyer then told Acuna they should leave the apartment. Acuna left the apartment with Meyer but returned moments later to help Campos. Meyer was located the following day in San Antonio where he voluntarily surrendered. In a written confession, Meyer stated he "went at" Campos with a knife after Campos began "talking s--- under the table" to him. Meyer also stated he "stabbed [Campos] in the stomach or chest area more than once...didn't mean to kill him [,] just meant to cut him but was drunk." An autopsy revealed Campos died from "multiple shock force injuries," including a "three inch deep" stab wound that perforated his diaphragm and right side of the liver and a "two-and-a-quarter inch deep" stab wound that perforated the chest wall and left side of the liver.

Among the State's witnesses at trial were Campos's girlfriend, Ana Villegas, who testified she had spoken to Campos about forty-five minutes before the murder and "everything seemed fine;" Acuna, who recounted what he witnessed; and Alba, who testified Meyer admitted he had "messed up" and "f----- someone up" after being talked s--- to" [sic] The State also presented testimony at punishment that Meyer had previously been arrested for burglary of a motor vehicle. Meyer had also been arrested for public intoxication, and the search incident to that arrest yielded 2.7 grams of marijuana.

Testifying at guilt-innocence, Meyer "expanded on" his statements in his written confession and presented a theory of self-defense. According to Meyer's trial testimony, Campos began insulting and threatening Meyer after Acuna went to sleep, at one point going up to Meyer's ear and threatening Meyer that he would not "leave th[e] apartment alive." Campos also "kept going in to another room and coming back." Meyer testified that he had just met Campos and that Campos had told him early in the evening that he had a gun, although Campos never showed it. Afraid and believing Campos had a gun in his pocket and would act on his threats, Meyer grabbed a knife and began stabbing Campos repeatedly. Meyer testified he had slept very little and had consumed "a lot of alcohol" and "some cocaine." Meyer testified further that he did not intend to

2

>kill Campos but wanted to "just poke him or cut him" so that Meyer could have "enough time to run out the door." Meyer explained he did not call for help and chose to flee the scene because he was afraid and wanted advice from a cousin who lived in San Antonio. He did not realize Campos had died until a friend told him. Meyer's testimony concerning the gun and that he had just met Campos was corroborated by other witnesses, who also testified that Campos was bigger and older than Meyer. Meyer did not testify at punishment but argued he acted under the immediate influence of sudden passion. Several of his family members also urged at punishment that he be granted probation.
>
>As stated, the jury found Meyer guilty of murder, impliedly rejecting his self-defense claim. The jury also rejected his claim of sudden passion.

*Meyer v. State*, No. 05-05-00900-CR, slip op. at 2-3 (Tex. App.–Dallas, July 19, 2007, pet. ref'd).

On direct appeal, petitioner alleged that the evidence was factually insufficient to support the jury's rejection of his self-defense claim, the trial court had erred in denying his motion to suppress his statement, the court had erred in failing to declare a mistrial following inadmissible victim impact testimony given at the guilt phase of the trial, and the court erred in overruling a defense objection to the prosecution's closing argument at the guilt phase of the trial. Petitioner also argued on appeal that the trial court erred in admitting certain evidence at punishment, that the jury's failure to find that he acted under the influence of sudden passion was against the great weight and preponderance of the evidence, and that the cumulative effect of the errors warranted a new trial. Petitioner's conviction was affirmed on direct appeal, and his petition for discretionary review was refused. *See* PDR-1151-07.

Petitioner filed a state habeas application on November 25, 2008, raising the same grounds for relief as in his federal petition and others. (State Habeas Transcript[WR-72,882-02]:2-14). On January 20, 2010, the Court of Criminal Appeals denied relief without written order on the trial court findings without a hearing. (S.H.Tr.:cover).

3

On March 10, 2010, petitioner mailed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 10). Respondent filed a response on May 10, 2010, and provided the state court records. No reply brief was filed.

**B. <u>Substantive Issues</u>**

Petitioner claims that: 1) his trial counsel provided ineffective assistance of counsel; 2) his appellate counsel provided ineffective assistance of counsel; 3) his conviction was obtained due to prosecutorial misconduct; 4) his due process rights were violated because improper victim impact testimony was admitted during the guilt phase of the trial; 5) the State withheld exculpatory evidence from the defense in violation of *Brady v. Maryland*; 6) his conviction was obtained through the use of evidence gained through an unconstitutional search and seizure; and 7) his due process rights were violated when the State violated a motion in limine. Respondent does not contend that petitioner failed to exhaust any of his claims at the state level, but he does contend that petitioner's sixth ground for relief is barred from review at the federal habeas level.

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

>   Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th

Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  SEARCH AND SEIZURE

In his sixth ground, petitioner asserts that his conviction was obtained through the use of an unconstitutional search and seizure. He argues that the State should have obtained search warrants before seizing evidence from the victim's apartment and some of the victim's clothes from the medical examiner after the autopsy. (Pet. at 9, Appendix A at 7-8).

It is well-settled that a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976). A full and fair hearing contemplates that where there are factual disputes, the matter must be considered by the original fact-finding court, and there must be meaningful appellate review available even if unused. *See Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986). The Fifth Circuit has also stated that a Fourth Amendment claim has been fully and fairly litigated in state court where the material facts were adequately developed in state court and there is no undeveloped evidence sufficient to call into question the reliability of the state court's determination. *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994); *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987).

In this case, this issue was not addressed at the trial level because it was not raised by trial

counsel. At the state habeas level, the trial court found that petitioner had no expectation of privacy as to the challenged exhibits because they were retrieved from the victim's person and apartment, and that his counsel was therefore not ineffective for failing to raise this as an issue. Petitioner's state writ was denied on its merits. (S.H.Tr.:cover, 72). Petitioner has not alleged any undeveloped facts sufficient to call into question the reliability of the state court's determination. This issue was fully and fairly litigated at the state level, and petitioner's sixth ground is therefore barred from review by this Court.

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first ground, petitioner claims that his trial counsel was ineffective because she: 1) failed to either question the medical examiner's testimony or use an experienced medical examiner to aid in his defense; 2) did not have a psychologist testify about petitioner's state of mind; 3) did not raise the lack of a search warrant when certain items were seized by the police from the victim's apartment and his person; 4) did not object to the jury charge because it did not contain an instruction regarding the voluntariness of petitioner's written statement; 5) failed to obtain the victim's criminal history from the State; and 6) did not object when the State violated a motion in limine. (Appendix A at 6-14).

To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

A. **Medical Examiner's Testimony**

Petitioner first contends that his attorney was ineffective for failing to adequately cross-examine the medical examiner and for failing to hire a separate medical examiner to assist in his defense. He claims that his attorney failed to ensure that the medical examiner's trial testimony was based on theories accepted by the scientific community and would assist the jury in understanding the evidence because she did not ask about, or object to, the failure to qualify the medical examiner as an expert witness. (App. A at 8).

8

At the state habeas level, petitioner's trial attorney submitted an affidavit in which she explains that there was no evidence that the medical examiner's experience was deficient, that any theory used by the expert was novel, or that a different medical examiner would have affected the outcome of the trial. (S.H.Tr.:78). The state habeas court found that this claim was without merit because petitioner had failed to show in what way the medical examiner's experience and education were deficient or how the testimony of another medical examiner would have made a difference. This claim was denied on its merits. (S.H.Tr.:cover, 71). This decision is not an unreasonable application of the *Strickland* standard.

The medical examiner testified that the victim was stabbed five times; two of the injuries occurred in the liver and resulted in the loss of a huge amount of blood. (R. 3:267-270). She further testified that the victim died from multiple shock force injuries. (R. 3:277). Petitioner has not alleged, much less shown, that her testimony was based on theories not accepted by the medical community such that her qualifications as an expert should have been questioned by his attorney. Moreover, petitioner never contested the fact that he stabbed the victim several times and that this caused his death. Instead, he testified at trial that he stabbed the victim in self-defense but did not intend to kill him. (R. 4:15-18, 26, 30). Petitioner has not shown that if his attorney had questioned the medical examiner's qualifications or had another medical examiner testify for the defense, there was a reasonable probability that he would not have been convicted. This claim is without merit.

## B. Psychologist

Petitioner next contends that counsel was ineffective for failing to have a psychologist testify about his mental state at the time of the murder.

In her affidavit, defense counsel states that she filed a motion to obtain a psychiatric expert, and it was granted by the trial court. She also states that this expert examined petitioner and

9

provided her a written report based on this examination. Based on this report, she decided not to call the expert as a witness because she believed that he would be a harmful witness for petitioner. (S.H.Tr.:78).

The state habeas court determined that this claim was without merit (S.H.Tr.:cover, 71-2), and this determination is not an unreasonable application of federal law. If counsel has made an adequate investigation, an informed decision made based on trial strategy cannot be the basis for a claim of having received ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *cert. denied*, 540 U.S. 11865 (2004), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Furthermore, a failure to present evidence at trial does not constitute "deficient performance" under the *Strickland* standard if counsel could have concluded, for tactical reasons, that presenting such evidence would be unwise. *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997). Defense counsel's affidavit explains her strategic decision not to call her expert as a witness at trial because the testimony would have been harmful to petitioner. Counsel was not ineffective for making this strategic decision, especially because petitioner has failed to identify any mental condition or disorder that he suffers from and about which an expert could have testified. This claim is without merit.

## C. Search Warrant

Petitioner claims that his attorney was ineffective for failing to object that the police did not obtain search warrants before seizing a business card with petitioner's name on it from the victim's apartment and the victim's clothing from his body at the time of his autopsy.

Petitioner's trial attorney states in her affidavit that she saw no need to ask about the need for search warrants because these items were collected at the crime scene and the medical

examiner's office. (S.H.Tr.:78). The state habeas court found that petitioner had no reasonable expectation of privacy at the locations where the evidence was seized, and counsel was therefore not deficient. (S.H.Tr.:72). This is not an unreasonable application of the *Strickland* standard.

In order to contest the validity of a search under the Fourth Amendment, a defendant must have standing to do so. A person has such standing where he has a reasonable expectation of privacy because: 1) he is able to establish an actual, subjective expectation of privacy with respect to the place being searched, and 2) that expectation is one which society views as a reasonable one. *United States v. Cardoza-Hinojosa*, 140 F.3d 610, 614 (5th Cir. 1998). Petitioner has not shown that he had any reasonable expectation of privacy in either the victim's apartment or the victim's person. Therefore, he had no standing to contest these warrantless searches, and counsel was not ineffective for failing to raise this issue at trial.

## D. <u>Involuntary Statement Jury Instruction</u>

Petitioner next asserts that his attorney was ineffective for failing to request a jury instruction on the issue of whether the written statement he provided to the police was voluntary.

In her affidavit, defense counsel explains that she did not request this instruction because petitioner testified at trial that the police had informed him of his rights, he waived those rights, and he told the police that he wanted to tell his side of the story. (S.H.Tr.:80, R. 4:54-5). At the state habeas level, the trial court noted that under Texas law, if a trial judge determines that a statement from the accused is voluntary and admits it into evidence at trial, the defendant may offer evidence to the jury that the statement was not voluntary. If such evidence is offered, the judge shall give the jury an instruction on this issue. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ 6, 7 (Vernon 2005). The trial court found that no evidence was presented to the jury that the statement was not voluntary. Petitioner testified that he voluntarily waived his rights and gave a statement to the police because

11

he wanted to tell his side of the story. (S.H.Tr.:72-3). Accordingly, the trial court found that counsel had not been deficient in failing to request such an instruction, and that petitioner had failed to establish that requesting the instruction would have produced a different result at trial. (*Id*. at 73). This is not an unreasonable application of the *Strickland* standard.

The state habeas court made its finding under state law. In federal habeas proceedings the court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). As noted by both the state habeas court and defense counsel, petitioner testified at trial that he voluntarily waived his rights and told the police what happened because he "wanted to do the right thing." (R. 4:68-9). Petitioner has failed to establish prejudice because he has failed to show that there is a reasonable probability that he would not have been convicted of murder if such an instruction been submitted. This claim is therefore without merit.

### E.  **Criminal History of Victim**

Petitioner next claims that his attorney was ineffective for failing to obtain the criminal history of the victim from the State.

In a hearing before the start of trial, defense counsel stated on the record that she had asked for, and not received, any criminal record of the victim. The prosecutor responded that he had searched for any criminal record under names known to have been used by the victim and had located no evidence of a criminal record. (R. 3:37-39). Counsel did make a reasonable attempt to obtain any possible criminal history of the accused. Moreover, the duty to disclose potentially exculpatory or mitigating evidence is an affirmative duty of the State, not defense counsel. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Petitioner has not alleged or shown that the victim actually had any criminal history that was not disclosed to the defense. At the state habeas level,

the trial court found that this claim was without merit, and it was denied on its merits. (S.H.Tr.:cover, 73). This denial is neither contrary to federal law nor an unreasonable application of the *Strickland* standard.

## F. Motion in Limine

Petitioner also claims that trial counsel was ineffective for failing to move for a mistrial when the State violated a motion in limine, thereby preserving the issue for appeal. (App. A. at 14).

During cross-examination, the prosecutor began to question petitioner about a telephone conversation with his mother while he was in police custody. Defense counsel objected, and a hearing was held outside of the presence of the jury regarding an oral statement petitioner may have made to his mother. Defense counsel objected that it should not be admitted into evidence because the defense had obtained a motion in limine on this issue and because the State did not inform the defense of its intent to use the statement at trial. The trial court agreed that timely notice had not been provided to the defense and ruled the statement inadmissible. Petitioner was not questioned about the statement in front of the jury. (R. 4:56-60).

Petitioner contends that his attorney was ineffective for failing to preserve this issue for appeal. However, defense counsel's objection was sustained, and the oral statement was not admitted into evidence. Accordingly, there was no potential error that required preservation because the trial court granted defense counsel's objection. The state habeas court found that this ground was without merit because the challenged testimony was not presented to the jury. (S.H.Tr.:74). This claim was denied on its merits at the state level. (S.H.Tr.:cover). This denial is not an unreasonable application of the *Strickland* standard. The failure to make meritless objections or motions does not constitute deficient performance. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Petitioner's claims that trial counsel was ineffective are without merit and should be denied.

## V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his second ground for relief, petitioner argues that his appellate attorney was ineffective for failing to raise legitimate and meritorious issues on appeal and in the motion for new trial, including the lack of a jury instruction on the voluntariness of petitioner's written statement.

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Rather, "the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). Courts must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Petitioner's conclusory allegations that appellate counsel was ineffective for failing to raise unspecified meritorious claims on appeal are insufficient to obtain habeas relief. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). As for the failure to raise the lack of a jury instruction on the voluntariness of petitioner's statement in the motion for new trial, petitioner's appellate

14

counsel provided an affidavit at the state habeas level. It states that he made the strategic decision not to raise this issue because he did not believe that any alleged charge error was sufficiently egregious to warrant inclusion, especially since any jury charge error would be subject to a harmless error analysis. It notes that he did raise the court's denial of trial counsel's motion to suppress petitioner's statement on appeal. (S.H.Tr.:82). The state appellate court overruled this point of error, concluding that petitioner knowingly and intelligently waived his rights prior to giving a written statement to the police, and that the court therefore did not err in denying the motion to suppress. *Meyer v. State*, slip op. at 8. The state habeas court found counsel's affidavit to be credible and concluded that he was not ineffective for leaving out weaker issues. (S.H.Tr.:74). This is not an unreasonable application of the *Strickland* standard.

As noted, petitioner testified at trial that he was informed of his right to remain silent by the police, and he waived this right because he wanted to tell his side of the story. (R. 4:54-5). Petitioner has therefore shown no reasonable probability that this claim would have succeeded on appeal. Counsel was not ineffective for failing to raise on appeal that the jury should have received an instruction concerning whether petitioner's statement was involuntary. *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal). Petitioner's second ground for relief is without merit and should be denied.

## VI. PROSECUTORIAL MISCONDUCT

Petitioner next contends that the prosecution committed misconduct during closing statements at the guilt phase of the trial when the prosecutor made the following statement:

> Right now, lets talk about this case and let's flip it on its head. Right now what we have is John Meyer sits here, and as he sits here today, he is an innocent man. Let's do that. Let's talk about what exactly would have to happen and the

15

>circumstances, and frankly, the bad luck that would have to happen to him for that to be the case.

(R. 4:100). Petitioner maintains that this comment was a misstatement of the law and shifted the burden of proof to him to prove his innocence. (App. A at 16-18). On direct appeal, the state appellate court addressed this claim, finding that while the prosecutor's argument was an improper one, it did not have a substantial and injurious effect or influence on the jury's verdict. It was limited to a single remark, the jury had been instructed during voir dire and in the jury charge that petitioner was presumed innocent and the prosecution had the burden of proving guilt beyond a reasonable doubt, and the evidence of petitioner's guilt was substantial. *Meyer v. State*, slip op. at 10-11. This is not an unreasonable application of federal law.

Even assuming the statement rose to the level of constitutional error, petitioner would be entitled to federal habeas relief due only if it had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Under *Brecht,*

>a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief, petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637. He has not made this showing. The state appellate court applied the same harmless error standard as that in *Brecht* and determined that the error did not have a substantial and injurious effect or influence on the jury's verdict due to the reasons given by that court. Petitioner has not shown that this application of federal law is an unreasonable one, and his third ground for relief is without merit and should be denied.

## VII. VICTIM IMPACT TESTIMONY

In his fourth ground for relief, petitioner contends that his constitutional rights were violated because impermissible victim impact testimony was admitted into evidence at the guilt phase of the trial when the victim's girlfriend testified about the victim's family. She testified that the victim was cremated in the United States because it was too expensive to return his body to his home country of Peru, and that his mother and brother could not be at the trial for financial and medical reasons.

The state appellate court addressed this issue and held that the challenged testimony was not actually victim impact testimony because it did not concern the effect that the victim's death had on others. The court therefore concluded that this testimony was not inadmissible. *Meyer v. State*, slip op. at 9-10. This conclusion is not contrary to federal law.

Overruling its previous case law, the United States Supreme Court held in *Payne v. Tennessee*, 501 U.S. 808 (1991), that the Eighth Amendment did not prohibit the admission of victim impact evidence at the sentencing stage of a capital murder trial. *Id.* at 827. In defining victim impact testimony, the Court held that a state may "legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Id.* at 825.

Petitioner contends that the girlfriend's testimony was impermissible because it was presented at the guilt phase of the trial. The testimony was not victim impact testimony as that term has been defined by the Supreme Court, however. Even if it was, the Supreme Court in *Payne* further stated that the Due Process Clause of the Fourteenth Amendment prohibits the introduction of evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair." *Id.* at 825. Petitioner has not shown that brief testimony concerning the victim's cremation and the reasons why his family was not in attendance at the trial was so unduly prejudicial such that it rendered

17

petitioner's trial fundamentally unfair. Petitioner's fourth ground for relief is without merit and should be denied.

## VIII. EXCULPATORY EVIDENCE

In his fifth ground, petitioner claims that the State withheld exculpatory evidence from the defense by not disclosing the victim's criminal record, and that this failure prejudiced his defense.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). In other words, there must be "a 'significant possibility' of a different result to characterize the *Brady* materiality standard." *Strickler*, 527 U.S. at 300 (Souter, J., concurring).

As noted earlier, during a pre-trial hearing, defense counsel stated that the criminal history of the victim had not been provided to the defense by the State. The lead prosecutor responded that

18

the State had searched for any criminal record for the victim under two names he was known to have used and could not locate any such history. (R. 3:37-9). The record does not reflect that the State had any exculpatory evidence that was not disclosed to the defense, and petitioner has not presented any evidence that the victim had a criminal history. He has failed to establish the elements of a *Brady* violation. At the state habeas level, the trial court found that petitioner had failed to show that the victim had a criminal record and that, therefore, no *Brady* violation was committed (S.H.Tr.:76). The state habeas court denied this claim on its merits. (S.H.Tr.:cover). This denial is not an unreasonable application of federal law, and this ground for relief should be denied.

### IX. MOTION IN LIMINE

In his seventh ground for relief, petitioner contends that the his due process rights were violated when the State violated a motion in limine. As noted, the prosecution tried to ask petitioner about an oral statement to his mother. Defense counsel objected. The trial court sustained the objection and ruled that the oral statement was not admissible at trial because adequate notice had not been provided to the defense, so petitioner was not questioned about it. (R. 4:56-60).

The state habeas court found that because the oral statement was not admitted, any complaint on this issue is without merit. (S.H.Tr.:74). This is not contrary to federal law. Petitioner's trial counsel requested a motion in limine to prevent the State from presenting evidence about the oral statement before a hearing was held before the judge. A hearing was held, and the statement was not admitted into evidence. (R. 4:56-59). Petitioner's due process rights were therefore not violated, and this ground for relief should be denied.

### X. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

19

## XI.  RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 21st day of July, 2010.**

```
                    _____
                         IRMA CARRILLO RAMIREZ
                    UNITED STATES MAGISTRATE JUDGE
```

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

```
                    _____
                         IRMA CARRILLO RAMIREZ
                    UNITED STATES MAGISTRATE JUDGE
```